Filed 2/18/15  Prof. Engineers in Cal. Government v. Brown CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PROFESSIONAL ENGINEERS IN CALIFORNIA GOVERNMENT et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> EDMUND G. BROWN, as the Governor etc., et al., <br><br> Defendants and Respondents. | A141028 <br><br><br> (Alameda County Super. Ct. No. RG13673444) |

Professional Engineers in California Government (PECG), the exclusive bargaining representative for some 10,000 state engineers and related professionals in state Bargaining Unit 9, appeals the denial of its petition for a writ of mandate challenging the imposition of one-day-per-month furloughs on its members during the 2012-2013 fiscal year. PECG contends that these legislatively authorized furloughs contravene the terms of the 2011-2013 memorandum of understanding (MOU) previously entered with the state and approved by the Legislature, thus unconstitutionally impairing the terms of a binding labor contract. As the trial court held, however, the terms of the MOU did not preclude imposition of the furloughs, the furloughs and consequent salary reductions were in full compliance with California law, and there was no impairment of contractual rights. We shall therefore affirm denial of the writ.

1

## Background

Although the parties' briefing recounts the history of the public employee furloughs and furlough litigation that arose out of California's recent fiscal crisis, beginning with two-days-per-month furloughs imposed for the period from February 1, 2009, through June 30, 2010, the issue in this case can be stated and analyzed quite simply, without belaboring the history of these events. In March 2011, PECG and the Department of Personnel Administration, now the California Department of Human Resources, agreed to the terms of a Unit 9 MOU for the period April 1, 2011, through July 1, 2013. The agreement was subsequently ratified by the members of PECG, approved by the Legislature in Senate Bill No. 151 (Stats. 2011, ch. 25), and signed into law by the Governor on May 16, 2011. Article 5.14 of the MOU provides for a "Personal Leave Program 2011" as follows: "Effective with the pay period following agreement and then continued for 12 months, full time bargaining unit employees shall be subject to a personal leave program (PLP 2011) eight (8) hours per month in the manner outlined below: [¶] 1. Effective with the pay period following agreement each full time employee's monthly pay shall be reduced by 4.62%. However, salary rates and salary ranges shall remain unchanged. PLP 2011 shall end after 12 pay periods." The PLP was thus in effect from June 2011 through May 2012. Article 26, subdivision (A) of the MOU provides: "Due to the savings achieved through this contract, the State shall not implement a new furlough program during the months employees participate in the Personal Leave (PLP) 2011."

Unlike the majority of the state's 21 bargaining units, PECG was unable to reach agreement with the Department of Human Resources to an extension of the personal leave program and consequent reduction in employee compensation beyond May 2012. Following an impasse in negotiations, the Legislature enacted and the Governor signed Assembly Bill No. 1497, which amended section 3.90 of the Budget Act of 2012[1] to read

---

[1] The Budget Act of 2012 was embodied in Assembly Bill No. 1464 (Stats. 2012, ch. 21), but the relevant provisions of that act were superseded by the provisions of Assembly Bill 1497. (Stats. 2012, ch. 29, § 69.) Contrary to PECG's assertion , the constitutional

2

as follows: "(a) Notwithstanding any other provision of law, each item of appropriation, with [certain] exception[s] . . . , shall be reduced, as appropriate, to reflect reductions in employee compensation in the total amounts of $401,716,000 from General Fund items and $437,413,000 from items relating to other funds. These reductions shall be achieved through any combination of the following: (1) memoranda of understanding reached pursuant to Section 3517.5 of the Government Code, (2) furloughs, and (3) other reductions for nonrepresented employees achieved with existing administration and statutory authority. [¶] The Director of Finance shall allocate the necessary reductions to each item of appropriation (Budget Act and non-Budget Act) to accomplish the employee compensation reductions required by this section." (Stats. 2012, ch. 29, § 69.) At the same time, the Legislature also enacted, and the Governor signed, Senate Bill 1006, which modified Government Code section 19849 to read: "Notwithstanding any other law, the department shall adopt a plan for the period from July 1, 2012, to June 30, 2013, inclusive, by which all state employees not subject to the Personal Leave Program 2012 (PLP 2012 Program), as described in subdivision (c) of Section 19851, shall be furloughed for one workday per calendar month. The department shall further adopt rules for the implementation, administration, and enforcement of this furlough plan. . . . ." (Stats. 2012, ch. 32, § 20.)

On July 5, 2012, the Department of Human Resources issued a memorandum implementing the furlough program for members of Unit 9, requiring furloughs one workday per month for 12 months and reducing base salaries during that period by 4.62 percent. In March 2013, PECG filed its petition seeking cancellation of the furlough program, alleging that the legislation "purporting to authorize furloughs constitute[s] an impairment of contract in violation of the Federal and State Constitutions." Following briefing and argument, the trial court issued a thorough opinion, holding that "as a matter of contract interpretation . . . the MOU does not preclude imposition of a furlough in the

---

contracts clause did not preclude amendment of the budget act to provide for furloughs following passage of Assembly Bill No. 1464. (See *Professional Engineers v. Schwarzenegger* (2010) 50 Cal.4th 989, 1005, 1043.)

3

MOU's second year. The MOU does not contain any provision or clause that required the State to employ PECG's members a certain number of days per year or month or that precluded the State from imposing a furlough program or otherwise limiting the hours of work for PECG members. In the absence of a contract term precluding a furlough, the Legislature has the ability to impose an employee furlough. (*Professional Engineers* [*v. Schwarzenegger, supra*], 50 Cal.4th at [p.] 1048.)" This timely appeal from the ensuing adverse judgment followed.

## Discussion

PECG's entire argument rests on the premise that the 2011-2013 MOU contains the implicit agreement that no furloughs would be imposed for the length of the agreement. As the trial court held, this contention cannot be upheld as a simple matter of contract interpretation. The MOU adopted a one year "personal leave program," producing the same financial result as monthly furloughs, and provided that while that program was in effect there would be no additional furloughs. This commitment was observed. However, the MOU said nothing about the possibility of imposing furloughs when the personal leave program expired. In agreeing that "the state shall not implement a new furlough program during the months employees participate" in the personal leave program, the obvious inference is that there was no such commitment beyond the expiration of that program. The inference is strengthened by the parties' certain awareness of the decision of the California Supreme Court only months before holding that the Legislature retains "ultimate control (through the budget process) over expenditures of state funds required by the provisions of an MOU." (*Professional Engineers v. Schwarzenegger, supra,* 50 Cal.4th at p. 1043.) PECG argues that imposing the furloughs, with the consequent reduction in compensation and hours worked, was inconsistent with the salary range and work-week schedules incorporated in the MOU. However, as the trial court correctly held, those schedules "do not address the issue of furloughs." (See *id.* at pp. 1026-1029, 1037.)

Moreover, were there any doubt about the meaning of these provisions in the MOU, there is another fundamental reason for which the agreement cannot be understood

to have committed the state to refrain from imposing furloughs after May 2012. As *Professional Engineers* reaffirmed, financial commitments, such as the payment of salaries, contained in an MOU are subject to approval by the Legislature. Government Code section 3517.6, subdivision (b) provides explicitly, "If any provision of the memorandum of understanding requires the expenditure of funds, those provisions of the memorandum of understanding may not become effective unless approved by the Legislature in the annual Budget Act." Mirroring this statutory provision, section 3 of Senate Bill No. 151, by which the Legislature approved the Unit 9 MOU, provides explicitly: "The provisions of the memoranda of understanding approved by Section 2 of this act that are to take effect on or after April 1, 2011, and that require the expenditure of funds, *shall not take effect unless funds for these provisions are specifically appropriated by the Legislature*. If funds for these provisions are not specifically appropriated by the Legislature, the state employer and the affected employee organization shall meet and confer to renegotiate the affected provisions." (Italics added.) Since the Legislature did not appropriate funds to compensate employees during the furlough periods, the MOU did not require any such compensation and the imposition of the furloughs was not inconsistent with the terms of the MOU. (See also, e.g., *White v. Davis* (2003) 30 Cal.4th 528, 572-573.)

## Disposition

The judgment is affirmed.

_____

Pollak, J.

We concur:

_____

McGuiness, P. J.

_____

Jenkins, J.